**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

MICHAEL F. ARNALL,

    Plaintiff,

v.

ADAMS COUNTY BOARD OF COUNTY COMMISSIONERS in their official capacities; and JAMES HIBBARD, in his individual and official capacity,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Michael F. Arnall ("Plaintiff" or "Dr. Arnall") by and through counsel David A. Lane and Qusair Mohamedbhai of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for his Complaint and Jury Demand as follows:

### A.    INTRODUCTION

1. This action arises out of Defendants' unlawful termination of Plaintiff's contractual services. Plaintiff was a physician contracting his medical services to Defendants and the Adams County Coroner's Office. Generally, Plaintiff performed autopsies and other pathology related services.

2. Plaintiff's coroner services were unlawfully terminated after he assisted numerous female employees in the Coroner's office in their opposition to unlawful sexual harassment in the workplace. Additionally, Dr. Arnall's contract with Defendants was unlawfully terminated after he engaged in politically protected speech.

3. This is an action to redress the violation of Plaintiff's rights pursuant to the First Amendment of the United States Constitution, and to seek damages, declaratory and injunctive relief, and attorneys fees arising under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. Section 2201.

### B. JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

5. The unlawful acts alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### C. PARTIES

6. Plaintiff is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.

7. The Adams County Coroner's Office is located at 330 North 19th Avenue, Brighton, Colorado.

8. The Adams County Commissioners are responsible for the administration of Adams County and are located within the county.

9. Defendant James Hibbard was the elected Coroner for Adams County at all times relevant herein, is an agent of Adams County, and at all times was acting under the color of law. He is the chief policy maker for the Coroner's Office.

### D. FACTUAL ALLEGATIONS

10. Dr. Arnall contracted his medical services with Defendants from early 2005 through December 2008.

11. During his service period with Defendants, Dr. Arnall witnessed severe and pervasive sexual harassment and retaliation upon many of Defendants' female employees.

12. For example, Ms. Emma Hall worked for Defendants from approximately February 2007 through July 2008.

13. Ms. Hall was employed as a coroner investigator. During the first six-months of her employment, supervisor Mark Chavez would often rub Ms. Hall's back, and made unwelcomed comments about Ms. Hall's appearance.

14. On April 15, 2008, Dr. Arnall brought the inappropriate sexual conduct by Mr. Chavez to the attention of Defendant Hibbard indicating that "the touching must stop." When Dr. Arnall was interviewed in the course of an alleged sexual harassment investigation of Mr. Chavez, he expressed opposition to workplace discrimination caused by Mr. Chavez and Defendant Hibbard.

15. Dr. Arnall opposed the sexual harassment and retaliation against other female employees as well, including Monica Jordan and Sherronda Appleberry.

16. Ms. Jordan worked for Defendants from approximately April 2005 through April 2009. Ms. Appleberry worked as a permanent employee with Defendants from January 2006 through April 2009.

17. Like Dr. Arnall, Ms. Jordan participated in the investigation into Mr. Chavez. Ms. Jordan told the investigator critical statements concerning Mr. Chavez and his sexual harassment of female employees. Soon after Defendant Hibbard learned of Ms. Jordan's statements to the sexual harassment investigator, despite her superior qualifications and exemplary job performance, Defendants started a pattern and practice of retaliation against Ms. Jordan.

18. In February 2008, Ms. Appleberry witnessed Mr. Chavez unlawfully massaging Ms. Hall's shoulders. Ms. Appleberry raised her concerns about Mr. Chavez's unlawful conduct with Dr. Arnall, Ms. Jordan, and Ms. Hall.

19. In mid-April 2008, during a period in which other employees were complaining to Defendant Hibbard concerning Mr. Chavez's unlawful conduct in the workplace, Ms. Appleberry informed Defendant Hibbard that she did not feel comfortable working around Mr. Chavez. Defendant Hibbard immediately became angry with Ms. Appleberry.

20. After this conversation, Defendant Hibbard began a series of retaliatory actions, making Ms. Appleberry's work environment less tolerable.

21. Mr. Chavez and Defendant Hibbard were close friends, and Defendants were aware of and condoned Mr. Chavez's unlawful behavior in the workplace.

22. Dr. Arnall witnessed the ongoing harassment and voiced his opposition to Defendant Hibbard undertaking a series of retaliatory actions against Ms. Jordan and Ms. Appleberry.

23. On August 28, 2008, Ms. Jordan filed her charge of discrimination with the Colorado Civil Rights Division concerning Defendant Hibbard's ongoing harassment and retaliation. On or about September 2008, Ms. Appleberry filed her Charge of Discrimination with the Colorado Civil Rights Division concerning Defendant Hibbard's ongoing harassment and retaliation.

24. Dr. Arnall was well known by Defendants as an outcry witness to many female employees' complaints of sexual harassment. Dr. Arnall also acted as an advocate for the women in the office who were being harassed. As such, Dr. Arnall was perceived by Defendant

25. Dr. Arnall was perceived by Defendant Hibbard as undermining his authority because Dr. Arnall was publically outspoken and critical of Defendant Hibbard's unlawful practices occurring at the Coroner's Office.

26. At various times during his service period, and as late as October 2008, Dr. Arnall communicated with Adams County District Attorney Don Quick regarding Defendant Hibbard's abuse of his elected position and the possibility of a recall vote.

27. As a result of engaging in protected speech, Defendant Hibbard ordered that no employees were to speak to Dr. Arnall.

28. On November 13, 2008, Defendant Hibbard began a pattern of extensive surveillance of Ms. Jordan and Ms. Appleberry using overhead autopsy suite cameras. Defendant Hibbard would use autopsy suite cameras to observe Ms. Jordan's and Ms. Appleberry's breasts.

29. On or about December 9, 2008, Dr. Arnall's contract was terminated, among other reasons, for preserving evidence of Defendant Hibbard observing Ms. Jordan's breasts with the autopsy camera.

### E. STATEMENT OF CLAIM FOR RELIEF

#### CLAIM FOR RELIEF
(42 U.S.C. § 1983 First Amendment Violation – Retaliation)

30. Dr. Arnall hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

31. Dr. Arnall was engaging in constitutionally protected activity, including but not limited to his protest of Defendants' unlawful employment practices.

5

32. In criticizing the actions of Defendant Hibbard, and bringing Defendant Hibbard's unlawful conduct to the attention of Don Quick and other outside sources, Dr. Arnall was engaging in the constitutionally protected activity of political speech.

33. Defendants' actions caused Dr. Arnall to suffer injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity.

34. Defendants' conduct violated clearly established rights belonging to Dr. Arnall of which reasonable persons in Defendants' position knew or should have known.

35. Dr. Arnall's speech was not disruptive, and was related to objectionable governmental conduct, a matter of important public concern.

36. Defendants' unlawful termination of Dr. Arnall's contract was substantially motivated as a response to Dr. Arnall's exercise of constitutionally protected conduct.

37. Defendants' adverse actions in retaliation for Dr. Arnall's complaining about objectionable governmental conduct and workplace discrimination concerning other employees caused Dr. Arnall to suffer injuries.

38. Defendants would not have terminated Dr. Arnall's contract in the absence of the protected speech.

39. Dr. Arnall's speech was calculated to expose the wrong-doing of government officials.

40. Dr. Arnall's right to speak out on issues of public concern outweighed any of Defendants' rights.

41. Defendants engaged in the conduct described in this Complaint willfully, wantonly and maliciously and in reckless disregard of Dr. Arnall's federally protected constitutional rights.

42. Defendant Hibbard has continuing, persistent and widespread practice of retaliation against individuals who engage in protected First Amendment conduct.

43. Defendants' indifference to the severe and pervasive sexual harassment and retaliation occurring at the Coroner's Office is a governmental, custom, practice and policy and the moving force behind Plaintiff's constitutional deprivations.

44. Plaintiff's constitutional violations were caused directly by Defendant Hibbard, a policy-making level employee for Defendants.

45. Defendant Hibbard created and promoted a culture of sexual harassment and retaliation.

46. All unlawful employment practices were either personally caused by Defendant Hibbard, personally approved by Defendant Hibbard, and/or tacitly authorized by Defendants.

47. Defendant County Commissioners failed to train and supervise Defendant Hibbard after being put on notice of Defendant Hibbard's unlawful discriminatory practices and abuse of his authority.

48. Defendants had a continuing, widespread, and persistent pattern of employment misconduct and First Amendment retaliation at the Adams County Coroner's Office.

49. Similar discrimination that occurred to Plaintiff also occurred to other employees of Defendants, such as Emma Hall, Amy Aragon, Monica Jordan, and Sherronda Appleberry.

50. Defendants demonstrated deliberate indifference to or tacit authorization of the conduct of Defendant Hibbard even after notice of the unlawful conduct.

51. Defendants' conduct proximately caused significant injuries, damages and losses to Dr. Arnall.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Equitable relief in the form of either reinstatement or front pay;

e. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs; and

h. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 24th day of November 2010.

KILLMER, LANE & NEWMAN, LLP

s/ Qusair Mohamedbhai
_____
David A. Lane
Qusair Mohamedbhai
1543 Champa Street, Suite 400
Denver, CO 80202
Attorneys for Plaintiff
(303) 571-1000
dlane@kln-law.com
qmohamedbhai@kln-law.com